COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

JOEL ACOSTA,                                    §

            Appellant,                     §

v.                                              §

TRI STATE MORTGAGE COMPANY,                     §

            Appellee.                      §

§

No. 08-08-00296-CV

Appeal from the

448th District Court

of El Paso County, Texas

(TC# 2008-2402)

# **O P I N I O N**

Appellant, Joel Acosta (Acosta), complains in four issues that the trial court erred in denying both his motion to dismiss for lack of jurisdiction and his motion for new trial, and in awarding attorney fees. We reverse in part and affirm in part.

## BACKGROUND

*No-Answer Default Judgment*

On June 18, 2008, Appellee, Tri State Mortgage Co., (Tri State), filed suit against Acosta for conversion, promissory estoppel, and fraud. Acosta was served with citation at 7:35 p.m. on July 16, 2008. Acosta did not file an answer.

On August 15, 2008, in Acosta's absence, the trial court conducted a default judgment hearing. At the hearing, Tri State's manager, Annette Roberts, testified that Tri State had closed a loan to Acosta in September 2007, and thereafter sold the loan to Chase Bank. Upon receiving paperwork from Chase Bank regarding the transaction, Ms. Roberts discovered that an error had been made regarding Acosta's escrow account in an amount over $8,000. Tri State informed Chase

Bank of its error. Ms. Roberts testified that Chase Bank informed Tri State that Chase had already issued a check to Acosta instead of Tri State, and that Tri State would be responsible for recovering the check from Acosta. Tri State contacted Acosta by telephone on November 2, 2007, and, more than once, informed him that the check was issued to him in error and that upon receiving it, he was not to deposit the check but, rather, was to return it to Tri State as the funds belonged to the company. Ms. Roberts testified that Acosta stated that he had not received the check and would bring it to Tri State if he received it. Two weeks later, on or about November 15, 2007, Tri State contacted Acosta again and Acosta informed Tri State that he had not yet received the check. Tri State again informed Acosta that he was to bring the check to Tri State and was not to cash the instrument as it belonged to Tri State. Tri State attempted to reach Acosta by phone on December 2, 2007, but Acosta did not answer its calls. Tri State contacted Chase Bank and filed a complaint with the reserve department in an attempt to track the check. On January 2, 2008, Tri State was notified that Acosta had, in fact, received and deposited the check on November 2, 2007, the date on which Acosta claimed that he had not received the check. Acosta began spending the funds on November 5, 2007. The check was admitted into evidence. After realizing that Acosta had cashed the check, Tri State issued a demand letter to Acosta on March 13, 2008, demanding that Acosta return the money. Acosta did not return the money to Tri State. At the default judgment hearing, Tri State requested exemplary damages, contending that Acosta's conduct was fraudulent, malicious, and grossly negligent, and reminded the trial court that Acosta made representations to Tri State while knowing that he had already deposited and used Tri State's money. Tri State's counsel, Ms. Forbes, requested attorney's fees, which the trial court noted it did not see in the file. Stating that she hoped the attorney's fees were "there," Ms. Forbes testified regarding the work she had performed. The trial court thereafter entered a default judgment against Acosta, awarding Tri State

$8,243.28 in principal, $24,000 in exemplary damages, $1,500 in attorney's fees, and other interest and costs.

*Motion for New Trial*

One month later, on September 15, 2008, Acosta filed a motion for new trial. The following day, Acosta filed an untimely-filed amended motion for new trial to which he had affixed two of his own affidavits.

In his timely-filed motion, to which no affidavits were attached, Acosta alleged that he had failed to answer the suit because he was served with citation on the day before he and his family left the state on a vacation that had been planned months in advance. The motion also alleged that, upon his return from vacation one and one-half weeks later, Acosta's employer allegedly directed him to attend a mandatory out-of-town training that lasted approximately two weeks. Acosta returned on August 11, 2008, contacted an attorney, and received an appointment for August 15, 2008. During the appointment, Acosta's attorney allegedly contacted the court and learned that the default judgment had been entered that same day.

In his motion, Acosta defended his conduct and contended that upon receiving the check, he returned it to the issuing entity, Chase Bank, as he did not know the purpose of the check. According to Acosta, Chase Bank held the check for three weeks and then notified Acosta that the money belonged to him. After receiving an alleged confirmation from Chase Bank, and purportedly in reliance upon it, Acosta deposited the check into his account at Chase Bank. Acosta asserted that Tri State never contacted him nor informed him of any mistake that may have occurred regarding the check until four months later, and he complained that neither Tri State nor Chase Bank explained why Tri State, rather than Acosta, was entitled to the funds. Acosta did not present any evidence from Chase Bank in support of his contentions.

Acosta raised other issues in his motion for new trial. He complained that Tri State did not request attorney's fees and did not provide him with notice that attorney's fees were being sought. He also asserted that Chase Bank was an indispensable party that was improperly omitted from the judgment and claimed that the failure to add Chase Bank as a party would deprive him of an opportunity to pursue his claims. Again, Acosta produced no evidence from Chase Bank.

Acosta requested that the trial court grant his motion for new trial as his failure to file an answer was due to mistake or accident and was not either intentional nor the result of conscious indifference, and contended that he responded to the suit quickly and prudently at his first available opportunity after receiving service of process. Acosta also asserted that he had a meritorious defense and at trial would show: (1) that he had acted upon the information provided to him by Chase Bank and had not engaged in tortious conduct; (2) that he had not agreed to Tri State's attorney's fees, which were not pled; and (3) that the exemplary damages awarded were excessive as his conduct did not warrant a grant of exemplary damages. Acosta stated that a new trial would not delay or prejudice Tri State, stated that he was both ready for trial and willing to reimburse Tri State for its reasonable expenses incurred in obtaining the default judgment.

### Tri State's Response

Tri State responded to Acosta's new trial motion with the affidavits of three Tri State employees and a copy of the demand letter issued to Acosta. Ms. Roberts' affidavit essentially restated her default-judgment hearing testimony.

In her affidavit, Ms. Lilly Velasquez, a Tri State accounting clerk, stated that during the last week of September 2007, a mistake in Acosta's escrow account was discovered. During the first week of October 2007, Ms. Velasquez discovered that a check for $8,243.28 had been mistakenly issued to Acosta rather than Tri State. During the week of October 8, 2007, Ms. Velasquez

telephoned Acosta at work, informed him that he would be receiving a check from Chase Bank, which had erroneously been made payable to him instead of Tri State. She instructed Acosta to not deposit the check, to return it to Tri State, and explained to him that the money belonged to Tri State because it constituted an overpayment of escrow that was taken from the Tri State account. Ms. Velasquez stated that Acosta informed her that he understood, agreed to return the money when he got it, and promised to call her when he received the check. She again spoke with Acosta at work on November 2, 2007, "confirmed" that he had not received the check, and instructed him to bring the check to Tri State when he received it. Acosta again promised to call upon receiving the check and informed Ms. Velasquez that he would also tell his wife to inform him if the check arrived in the mail. Approximately two weeks later, Ms. Velasquez again contacted Acosta who stated that he had not received the check and promised to either bring the check to Tri State or contact Ms. Velasquez so that she could pick it up from him. In early December 2007, Ms. Velasquez called Acosta at work and on his cell phones, left her phone number and detailed messages about the check, and requested that he call her. Ms. Velasquez did not receive any calls from Acosta. After discovering on January 4, 2008, that Acosta had previously cashed the check on November 2, 2007, Ms. Velasquez again attempted to call Acosta regarding the check and left messages for him, but Acosta never returned her calls.

The affidavit of Ms. Susan Nowak, a Tri State "loan closer," was also submitted in support of Tri State's response to the motion for new trial. Ms. Nowak was in charge of processing Acosta's loan application and explained to Acosta at the time of his application that Tri State would sell the loan. Acosta's loan was approved and Ms. Nowak shipped the appropriate documents to Chase Bank, which had purchased the loan on August 22, 2007. Tri State discovered the Acosta escrow error and Ms. Nowak learned during the first week of October 2007, that a check had been issued

erroneously to Acosta rather than Tri State. Ms. Nowak informed Ms. Velasquez of the error, was present when Ms. Velasquez called Acosta, and heard Ms. Velasquez tell Acosta about the escrow mistake and the importance of returning the check as it did not belong to him and was sent in error. She also heard Ms. Velasquez both inform Acosta that he needed to contact Tri State as soon as he received the check and offer to pick up the check from Acosta. Ms. Nowak continued to consult with Ms. Velasquez thereafter but learned that, although messages were left for Acosta, he was no longer returning her calls.

*New Trial Hearing*

A hearing on Acosta's new trial motion was held on September 22, 2008. The trial court struck as untimely the amended motion for new trial but, overruling Tri State's objections, considered Acosta's affidavit, which was tendered to the court by Acosta's attorney.[1] Acosta and Tri State each presented legal arguments to the court. Acosta did not call any witnesses, did not offer any other affidavits or other evidence in support of his motion, and failed to identify any witnesses, testimony, or evidence that he would present if a new trial was granted. After considering Acosta's motion and affidavit, Tri State's responses, arguments, and affidavits, and the applicable law, the trial court denied the motion for new trial. The trial court also entered detailed findings of fact and conclusions of law.

*Plea to the Jurisdiction*

Acosta thereafter filed a plea to the jurisdiction on September 30, 2008, to which Tri State responded. In his plea, Acosta contended that Chase Bank, not Tri State, owned and held the "note" and that Tri State could not sue in the name of Chase Bank, especially after Acosta's loan was sold to Chase Bank, which issued the check. Acosta also noted that Tri State had admitted that Chase

---

[1] Acosta did not appear or testify at his new-trial hearing.

Bank refused to seek recovery of the check from him and transfer the funds to Tri State. Acosta claimed that the trial court lacked subject-matter jurisdiction over the dispute. The trial court denied Acosta's plea to the jurisdiction and Acosta filed this appeal.

## DISCUSSION

In his first issue, Acosta complains that the trial court erred in denying his plea to the jurisdiction because Tri State allegedly did not have standing to file suit in this matter.

As a component of subject-matter jurisdiction, which is never presumed, cannot be waived, and can be raised for the first time on appeal, we review a claimant's standing *de novo*. *Texas Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993); *Esty v. Beal Bank S.S.B.,* 298 S.W.3d 280, 293 (Tex. App. – Dallas 2009, no pet. h). Standing is a constitutional prerequisite to maintaining suit. *Texas Dept. of Transp.*, 146 S.W.3d at 646; *see Tex. Ass'n of Bus.,* 852 S.W.2d at 444; *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984); *Girsh v. St. John*, 218 S.W.3d 921, 923 (Tex. App. – Beaumont 2007, no pet). To have standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). If a party lacks standing to bring an action, the trial court lacks subject-matter jurisdiction to hear the case. *Town of Fairview v. Lawler*, 252 S.W.3d 853, 855 (Tex. App. – Dallas 2008, no pet.).

The alleged absence of subject-matter jurisdiction may be raised in a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A plea to the jurisdiction is a mechanism by which a party contests the trial court's authority to decide a case. *Id.*; *El Paso County v. Navarrete*, 194 S.W.3d 677, 682-83 (Tex. App. – El Paso 2006, pet. denied). The plea is dilatory and its purpose is to defeat a cause of action without addressing the merits of the case. *Bland Indep.*

*Sch. Dist.*, 34 S.W.3d at 554; *Navarrete*, 194 S.W.3d at 683.  We review *de novo* a trial court's ruling on a plea to the jurisdiction.  *Navarrete*, 194 S.W.3d at 683.

Among its findings of fact and conclusions of law, the trial court made the following determinations.  Tri State loaned funds to Acosta to purchase a home and Chase Bank purchased the loan from Tri State.  Tri State accidentally overpaid funds into Acosta's escrow account and Chase Bank acknowledged the error.  Because Chase Bank's check for $8,243.28 had issued on October 4, 2007, and had been mailed to Acosta, Chase Bank informed Tri State that Tri State was responsible for recovering the check from Acosta.  Tri State had the right to immediate possession of the check issued by Chase Bank, which was personal property.  During the week of October 8, 2007, and on November 2, 2007, and on November 15, 2007, Tri State notified Acosta that the check was issued by mistake due to an overpayment made by Tri State to the escrow account, that the funds did not belong to Acosta but, rather, to Tri State, and advised him to deliver the check to Tri State as soon as he received it.  Acosta informed Tri State that he had not received the check but would return it upon receipt.  Acosta then received the check, and knowing that it had been issued in error and that the check did not belong to him, Acosta endorsed and negotiated the check on November 2, 2007.  The trial court found that Tri State was injured by Acosta's actions and never received the $8,243.28 to which it was entitled.

The facts established in the record, along with the trial court's findings and conclusions, demonstrate that Tri State had standing as it was personally aggrieved, and its injury was actual, concrete, and particularized.  *DaimlerChrysler Corp.*, 252 S.W.3d at 304.  Consequently, because Tri State had standing to pursue its claim, we find that the trial court did not err when it denied Acosta's plea to the jurisdiction.  We overrule Acosta's first issue on appeal.

As Acosta's remaining three issues complain of trial court error alleged to have occurred

during the new trial proceedings, we consider those issues together. A trial court possesses broad discretion in ruling on a motion for new trial, and an appellate court reviews the denial of a motion for new trial for an abuse of discretion. *Cliff v. Huggins*, 724 S.W.2d 778, 778-79 (Tex. 1987). A trial court abuses its discretion when it acts without reference to any guiding rules or principles, not when it exercises that discretion in a manner different than a reviewing appellate court might. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

In his second issue, Acosta relies upon the Texas Supreme Court's opinion in *Craddock* to support his position that the trial court should have set aside the default judgment and granted him a new trial. *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939). In *Craddock*, the Supreme Court of Texas held a default judgment should be set aside if the defendant establishes by its motion for new trial that: (1) the failure to answer before judgment was not intentional or the result of conscious indifference, but the result of an accident or mistake; (2) the motion for new trial sets up a meritorious defense; and (3) granting the motion will occasion no undue delay or otherwise injure the plaintiff. *Craddock,* 133 S.W.2d at 126. A defaulting defendant bears the burden of proving each of the three *Craddock* elements before a trial court is required to grant a motion for new trial. *Scenic Mountain Medical Center v. Castillo*, 162 S.W.3d 587, 590 (Tex. App. – El Paso 2005, no pet.). Acosta alleges that he has met each element of the *Craddock* test. We disagree.

We determine whether a party acted with conscious indifference in failing to answer the suit by examining the knowledge and acts of the party who failed to appear. *21st Century Home Mortg. v. City of El Paso*, 281 S.W.3d 83, 86 (Tex. App. – El Paso 2008, no pet.). A party acts with conscious indifference by failing to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances. *Liberty Mut. Fire Ins. Co. v. Ybarra*, 751 S.W.2d 615, 618 (Tex. App. – El Paso 1988, no writ). Where the factual allegations in a movant's

affidavits are uncontroverted, and where the affidavits set forth facts that, if true, would negate the presence of intentional or consciously indifferent conduct, a motion for new trial should be granted. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38-39 (Tex. 1984). If the non-movant presents controverting evidence, the issue then becomes a fact question for the trial court. *21st Century Home Mortg.*, 281 S.W.3d at 86; *see Ybarra*, 751 S.W.2d at 618. When determining whether the movant's factual allegations are controverted, we consider the entire record. *21st Century Home Mortg.*, 281 S.W.3d at 86; *Scenic Mountain Medical Center*, 162 S.W.3d at 590.

In our review of the entire record, we note a significant deficiency therein. After overruling Tri State's objections to the offer of Acosta's affidavit during the new trial hearing, the trial court stated that Acosta's affidavit would be allowed, would be filed with the record, and would be considered by the court. However, we find that the affidavit considered by the trial court has not been made a part of the record and is not identified as a part of the record on appeal. This Court *sua sponte* requested that the District Clerk supplement the appellate record with Acosta's affidavit and has been informed that the affidavit is not contained within the Clerk's file. We also note that the District Clerk's docket sheet does not contain an entry showing that the affidavit was filed with the Clerk. However, affixed to his untimely-filed amended motion for new trial, which the trial court struck, are Acosta's two affidavits that the trial court was not able to consider. Nonetheless, assuming that Acosta's missing affidavit was a duplicate of one or both of the untimely-filed affidavits, which in turn advance the same assertions set forth in Acosta's motion for new trial, we find that the facts asserted therein are insufficient to meet the first *Craddock* element.

Acosta does not assert nor does he show that he did not have knowledge of the suit. Indeed, the citation served upon him on July 16, 2008, clearly informed Acosta that he had been sued, that he may employ an attorney, and that if no answer was filed with the clerk by 10 a.m. on the Monday

next following the expiration of twenty days after he was served with citation and petition, a default judgment could be taken against him. There is no doubt that Acosta had knowledge of the suit. *21st Century Home Mortg.*, 281 S.W.3d at 86.

We next look at Acosta's actions. In his new trial motion and his untimely-filed affidavits, Acosta alleges that on the day following service of citation, he left town to travel to San Diego on a family vacation for one and one-half weeks, and he asserts that upon his return, he was immediately dispatched by his employer to Florida for two-weeks on work-related business. Acosta contends that he "addressed the issue of answering the suit in the morning of his first business day back in town" and "expeditiously contacted his attorney," believing "that he had sufficient time within which to file his answer since he acted promptly as soon as he returned home." These assertions fail to support Acosta's contention that his failure to file an answer was the result of mistake or accident and, instead, support a finding that Acosta acted with conscious indifference. *Ybarra*, 751 S.W.2d at 618. Making a telephone call to an attorney prior to the date an answer is due would seem to be the action indicated to a person of reasonable sensibilities under the same circumstances and, had Acosta done so, it is possible that an attorney could have timely prepared and filed the documents necessary to preserve Acosta's legal rights and defenses. *21st Century Home Mortg.*, 281 S.W.3d at 86; *Ybarra*, 751 S.W.2d at 618. Acosta did not contact his attorney until August 11, 2008, the date on which his answer was due to be filed in court and does not demonstrate any reason why he could not have done so. Consequently, we find that the trial court did not abuse its discretion when it denied Acosta's motion for new trial. *Strackbein*, 671 S.W.2d at 38-39; *Downer*, 701 S.W.2d at 241-42; *Cliff*, 724 S.W.2d at 778-79.

Where a party fails to establish one of the three elements of the *Craddock* test, there is no reason to address the remaining elements. *Scenic Mountain Medical Center*, 162 S.W.3d at 590.

We overrule Acosta's second issue on appeal.

In his third issue on appeal, Acosta complains that the trial court erred in denying his motion for new trial without setting aside an award of attorney's fees to Tri State for which he did not receive notice. During the default judgment hearing, at which Acosta and his attorney did not appear, Ms. Forbes asked to make a record regarding her attorney's fees, and the trial court noted, "I don't see that in here." Ms. Forbes stated, "Hopefully, it's there. It certainly was meant to be." Ms. Forbes requested $1,500 in attorney's fees, which the trial court awarded.

Generally, each litigant must pay its own attorney's fees. *MBM Fin. Corp. v. Woodlands Oper. Co.* , 292 S.W.3d 660, 663 (Tex. 2009). Otherwise, the recovery of attorney fees from an adverse party is only permitted upon proving that such recovery is authorized by statute, by a contract between the litigants, or under equity. *Akin, Gump, Strauss, Hauer & Feld*, L.L.P. v. *National Dev. & Research Corp*, 299 S.W.3d 106, 120 (Tex. 2009); *Knebel v. Capital Nat'l Bank*, 518 S.W.2d 795, 799 (Tex. 1975). A plaintiff must plead and prove attorney's fees or waive them. *State Farm Fire & Cas. Co. v. Leasing Enters.,* 716 S.W.2d 553, 555 (Tex. App. – Houston [14th Dist.] 1986, writ ref'd n.r.e.). While it is possible to provide an extensive analysis regarding the many intricacies and nuances which govern the recovery of attorney's fees, we need not do so here.

The record fails to demonstrate that Ms. Forbes pled and proved that her recovery for attorney's fees were authorized by statute, contract or equity. Consequently, she has waived any recovery of attorney's fees and the trial court erred in awarding them. *Akin, Gump, Strauss, Hauer & Feld*, L.L.P., 299 S.W.3d at 120; *State Farm Fire & Cas. Co.,* 716 S.W.2d at 555. We sustain Acosta's third issue on appeal.

In his fourth issue on appeal, Acosta complains that Chase Bank was an indispensable party that was not properly joined or made subject to the default judgment.

All feasible parties should be joined in a lawsuit. TEX. R. CIV. P. 39(a). A party is feasible if, without the absent party, complete relief cannot be given to those who are already parties, and the absent party claims an interest in the subject matter of the action. *Wilchester W. Concerned Homeowners LDEF, Inc. v. Wilchester W. Fund, Inc.*, 177 S.W.3d 552, 559 (Tex. App. – Houston [1st Dist.] 2005, pet. denied). Where a feasible party cannot be joined, the trial court must decide whether the absent person is indispensable. TEX. R. CIV. P. 39(b). The factors a trial court must consider when making this determination are: (1) the extent to which a judgment rendered in the person's absence might be prejudicial to it or to those already parties; (2) the extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder. TEX. R. CIV. P. 39(b).

The facts in this case do not bear out Acosta's complaint. While Chase Bank may have proven to be a beneficial witness to one or both of the parties had it been called for evidentiary purposes, it cannot be said under these facts and this record that complete relief could not be given to Tri State and Acosta without Chase Bank being named as a party. Nor is there any evidence in the record which supports a determination that Chase Bank claimed an interest in the subject matter of the action, that is, the check. Rather, the record demonstrates that Chase Bank recognized that Tri State was the appropriate party to pursue recovery of the errant check. Acosta has not demonstrated, and the record does not show, that the judgment rendered in Chase Bank's absence would possibly be prejudicial to Chase Bank, to Tri State, nor to himself. Because the record supports the trial court's determination that Chase Bank was not an indispensable party to this lawsuit, we find the trial court did not commit error. We overrule Acosta's fourth issue.

## CONCLUSION

Having sustained Issue Three, we reverse that part of the trial court's judgment. Having overruled Issues One, Two, and Four, the remainder of the trial court's judgment is affirmed.

 

 

_____

GUADALUPE RIVERA, Justice

August 25, 2010

Before Chew, C.J., McClure, and Rivera, JJ.