Affirmed as Modified and Opinion filed August 25, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-01026-CV

___________________

 

Epernay Community Association, Inc.,
Appellant

 

V.

 

Saad Shaar and Jeanette Shaar,
Appellees



 



 

On
Appeal from the 270th District Court

Harris County,
Texas



Trial Court Cause No. 2007-49806

 



 

 

OPINION

            The homeowners’ association for a neighboring
subdivision sought to collect fees from two homeowners in a different
subdivision relating to the maintenance of certain recreational areas. 
Following a bench trial the trial court granted declaratory relief in favor of
the homeowners.  On appeal, the homeowners’ association asserts that the trial
court erred in making these declarations and in denying its plea in abatement. 
We conclude the trial court erred in making one declaration, but did not err in
making the other declarations or in denying the plea in abatement. 
Accordingly, we modify the trial court’s judgment to delete the erroneous
declaration and affirm the judgment as modified.

 

I.                  
Factual and
Procedural Background

In
1975, a declaration of restrictive covenants was filed for a subdivision known
as “Epernay” (“Subdivision One”).  Appellant/defendant, Epernay Community
Association, Inc. (“Association One”), is a non-profit corporation that is the
homeowners’ association for Subdivision One, which contains certain
recreational areas relating to this litigation (“Recreational Areas”).  

In
1977, a declaration of restrictive covenants was filed for record pertaining to
a subdivision known as “Epernay Section 2” (“Subdivision Two”).  A few weeks
after these restrictive covenants were filed for record, a “Recreational Areas
Use Agreement” was filed for record (“Original Agreement”).  Association One,
another entity, and Greenmark, Inc., a corporation that then owned the land
comprising Subdivision Two, entered into the Original Agreement.  

Epernay
Section 2 Community Association, Inc. (“Association Two”), was the homeowners’
association for Subdivision Two.  In July 1980, Association One and Association
Two entered into an “Amended and Restated Recreational Areas Use Agreement,”
which was filed for record later that year (“Amended Agreement”). The Texas
Secretary of State ordered the charter of Association Two forfeited in 1981 for
its failure to file a franchise tax report, and Subdivision Two no longer has
an operating homeowners’ association.    

Under
the Amended Agreement, (1) homeowners in Subdivision Two purportedly are
required to pay Association One an annual fee to provide for the maintenance of
the Recreational Areas, and (2) Association Two purportedly transfers to
Association One all rights and remedies available to Association Two under the
Subdivision Two restrictive covenants (“Restrictive Covenants”), so that
Association One can use these rights and remedies to collect the annual fee
provided for in the Amended Agreement.

Appellees/plaintiffs
Saad Shaar and Jeanette Shaar are the owners of a lot in Subdivision Two
(“Property”) that is subject to the Restrictive Covenants.  After Association
One sought to assess and collect annual fees under the Amended Agreement
against the Shaars, they filed suit against Association One, seeking, among
other things, declaratory relief.  The Shaars asserted that Association One
does not have any authority to assess or collect these fees from the Shaars and
that Association One is not entitled to assert any claim against the Property. Association
One counterclaimed seeking declarations that (1) the Amended Agreement and Restrictive
Covenants are valid instruments that govern the Property;  (2) the Amended
Agreement establishes a valid lien against the lots of all Subdivision Two lot
owners, including the Shaars;  (3) Association One has the right to enforce the
Amended Agreement, assess and collect recreational usage assessments, and
foreclose upon the lien established by the Amended Agreement, against Subdivision
Two lot owners, including the Shaars.  Association One also sought to collect
allegedly past-due fees from the Shaars, to obtain recognition of a lien in
favor of Association One for these amounts, and to foreclose on this lien.

Association
One filed a plea in abatement, asking the trial court to abate the case and to
order the Shaars to join the other homeowners in Subdivision Two.  The trial
court denied this plea in abatement, and the claims proceeded to trial.

After
a bench trial, the trial court rendered judgment, making the following
declarations:

[Association
One] improperly enforced collection of Recreational Use fees and/or assessments
from [the Shaars].

 

[Association
One] has no legal right or authority to enforce any restrictions, conditions,
covenants, reservations, liens, or charges as to [the Shaars] or the Property.

 

[Association
One] had no legal right or authority to file suit against [the Shaars] to
enforce collection of Recreational Use fees and/or assessments.

 

[Association
One] had no legal right or authority to file a Notice of Unpaid Assessments
against [the Shaars] and the Property to enforce collection of Recreational Use
fees and/or assessments.

 

[Association
One] has no legal right or authority to enforce a claim for usage fees against
[the Shaars] or the Property. 

.
. .

[The
Shaars’] use of the [Recreational Areas] was a condition precedent to any
obligation to pay any Recreational Use assessments.

 

            The trial court denied the relief sought by
Association One in its counterclaims and awarded the Shaars reasonable and
necessary attorney’s fees.  The trial court filed findings of fact and
conclusions of law.  Association One has appealed. 

 

II.              
Standards of Review

Because
this was a bench trial, the trial judge issued findings of fact and conclusions
of law.  We review the trial court’s conclusions of law de novo.  Johnston
v. McKinney, 9 S.W.3d 271, 277 (Tex. App.—Houston [14th Dist.] 1999, pet.
denied).  Incorrect conclusions of law will not require a reversal if the
controlling facts support a correct legal theory.  Id.  The findings of
fact in a bench trial have the same force and dignity as a jury verdict, and we
review them for legal sufficiency of the evidence under the same standards we
apply in reviewing a jury’s findings.  See Anderson v. City of Seven
Points, 806 S.W.2d 791, 794 (Tex. 1991).  

In
this case, the trial court was asked to render judgment based upon instruments filed
for record in the Real Property Records of Harris County. These instruments are
subject to the general rules of contract construction.  See Pilarcik v.
Emmons, 966 S.W.2d 474, 478 (Tex. 1998).  In construing contracts, our
primary objective is to ascertain and give effect to the intentions of the
parties as expressed in the contract.  Kelley-Coppedge, Inc. v. Highlands
Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).  To ascertain the parties’ true
intentions, we examine the entire agreement in an effort to harmonize and give
effect to all provisions of the contract so that none will be rendered
meaningless.  MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d
647, 652 (Tex. 1999).  Whether a contract is ambiguous is a question of law for
the court.  Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121
(Tex. 1996).  Ambiguity does not arise simply because the parties offer
conflicting interpretations.  Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124
S.W.3d 154, 157 (Tex. 2003).  A contract is ambiguous when its meaning is
uncertain and doubtful or is reasonably susceptible to more than one
interpretation.  Heritage Res., Inc., 939 S.W.2d at 121.  But,
when a written contract is worded so that it can be given a certain or definite
legal meaning or interpretation, it is unambiguous, and the court construes it
as a matter of law.  Am. Mfrs. Mut. Ins. Co., 124 S.W.3d at 157.

 

III.           
Issues and Analysis

A.        Is the Amended Agreement
binding upon the Shaars under the terms of the Restrictive Covenants?

The
Shaars agree that the Original Agreement is binding on them.  But the Original
Agreement does not impose upon the homeowners in Subdivision Two any obligation
to pay an annual fee to Association One, nor does it give Association One any
of the enforcement powers against the homeowners in Subdivision Two that
Association One seeks to exercise against the Shaars.  Association One does not
assert that the Original Agreement gives it these powers.  Instead, Association
One relies upon the Amended Agreement, and asserts that this agreement is binding
on the Shaars as a covenant running with the Property under the following
article XXIX from the Restrictive Covenants:

Recreational Areas

            [Greenmark]
hereby reserves the right to enter into, for itself, [Association Two] and all
Owners [of a lot in Subdivision Two] other than [Greenmark], an agreement with
Texas Commerce Bank National Association, [Association One], or other parties
relating to the use by all of the Owners [of a lot in Subdivision Two] of [the
Recreational Areas] . . . . All Owners [of a lot in Subdivision Two] and [Association
Two] shall be bound by all of the terms and provisions of any such agreement
entered into by [Greenmark], and each Owner [of a lot in Subdivision Two] shall
pay and be responsible for the payment of any and all fees and charges to be
paid by him pursuant to said agreement, subject, however, to the terms thereof. 
[Association Two] shall have the rights and powers conferred upon it in
Articles XX and XXVI above, as well as any other remedies at law or in equity, to
enforce the payment of said fees and charges by any Owner.  Nothing herein
contained shall be deemed to confer upon the owner of any properties within [Subdivision
One] or upon any homeowner’s association or other entity relating thereto any
rights to enforce or benefit from any terms or provisions of this Declaration.

 

            Under the unambiguous language of this article,
(1) Greenmark has the authority to enter into an agreement with Association One
relating to the Recreational Areas; (2) such an agreement is binding upon
Association Two and all owners of lots in Subdivision Two; and (3) Association
Two has the power to enforce the payment of said fees and charges by the owners
in Subdivision Two.  Neither Greenmark nor any entity purporting to act as Greenmark’s
successor or assignee entered into the Amended Agreement.  Under the terms of
the Amended Agreement, the homeowners in Subdivision Two are purportedly
required to pay an annual fee to Association One, and Association Two has no
power to enforce the payment of these fees or any other fees or charges
prescribed in the Amended Agreement.  Instead, under the Amended Agreement,
Association Two purports to assign to Association One all of Association Two’s
rights, powers, and authority to enforce collection of the fees and charges
prescribed in the Amended Agreement.  For the foregoing reasons, the Amended
Agreement is not within the scope of the agreement authorized under Article
XXIX of the Restrictive Covenants.[1] 
There is no provision of the Restrictive Covenants under which the Amended
Agreement is made binding upon the Shaars.  Accordingly, the Amended Agreement
is not binding upon the Shaars under the Restrictive Covenants.  

B.        Even if the Amended Agreement
is not binding upon the Shaars under the terms of the Restrictive Covenants,
can the provisions of the Amended Agreement be considered valid restrictive
covenants binding upon the Shaars?

Association
One also asserts that, even without relying upon the Restrictive Covenants, the
Amended Agreement is a valid restrictive covenant binding upon the Shaars and
running with the land in Subdivision Two.  But under the unambiguous language
of the Restrictive Covenants, (1) Association One has no right to enforce or
benefit from any of the provisions of the Restrictive Covenants; and (2) the
only procedure for amending the Restrictive Covenants is provided in Article
XXXII of the Restrictive Covenants.  Under this article, the Restrictive
Covenants may be amended during the first thirty years of their existence by an
instrument signed by members of Association Two entitled to cast not less than
ninety percent of the aggregate votes of both classes of membership, and
thereafter by an instrument signed by members of Association Two entitled to
cast not less than seventy-five percent of the aggregate votes of both classes
of membership.  By purportedly giving Association One rights to enforce or
benefit from provisions of the Restrictive Covenants, the parties to the
Amended Agreement sought to amend the Restrictive Covenants in a manner not
prescribed under the terms of the Restrictive Covenants.  When the Amended
Agreement was signed and filed for record, restrictive covenants could not be
amended by a method not provided for in the original instrument containing the
restrictive covenants.  See Loving v. Clem, 30 S.W.2d 590, 592
(Tex. Civ. App.—Dallas 1930, writ ref’d); Hanchett v. East Sunnyside Civic
League, 696 S.W.2d 613, 615 (Tex. App.—Houston [14th Dist.] 1985, writ
ref’d n.r.e.).  

Since
the Amended Agreement was signed and filed for record in 1980, the Texas
Legislature has enacted various statutes providing statutory procedures under
which restrictive covenants may be amended.  See Act of May 24, 1985,
69th Leg., R.S., ch. 309, § 1, 1985 Tex. Gen. Laws 1364, 1364–68 (amended 1987,
1989, 1991, 1997, 1999, 2005, 2007) (current version at Tex. Prop. Code Ann. §
201.001, et seq.); Act of May 27, 1995, 74th Leg., R.S., ch. 1040, § 2,
1995 Tex. Gen. Laws 5170, 5171–75 (amended 2007, 2009) (current version at Tex.
Prop. Code Ann. § 204.001, et seq.); Act of May 26, 1999, 76th Leg.,
R.S., ch. 871, § 2, 1999 Tex. Gen. Laws 3554, 3554–56 (amended 2001) (current
version at Tex. Prop. Code Ann. § 208.001, et seq.); Act of May 20,
2005, 79th Leg., R.S., ch. 1180, § 1, 2005 Tex. Gen. Laws 3866, 3866–68
(current version at Tex. Prop. Code Ann. § 210.001, et seq.); Act of May
25, 2005, 79th Leg., R.S., ch. 1180, § 1, 2005 Tex. Gen. Laws 3564, 3564–57
(current version at Tex. Prop. Code Ann. § 211.001, et seq.).  The
Amended Agreement is not a valid amendment to the Restrictive Covenants under
any of these statutes, and Association One has not argued to the contrary.  See
Tex. Prop. Code Ann. § 201.006(b) (West 2007); id. § 204.003,
204.005(b) (West Supp. 2010 & West 2007); id. § 208.002(b) (West
2007); id. § 210.002 (West 2007); id. § 211.002 (West 2007). 
Thus, to the extent that the parties to the Amended Agreement purport to
transfer from Association Two to Association One the former’s enforcement
powers under the Restrictive Covenants or the right to benefit from the
provisions of the Restrictive Covenants, the Amended Agreement is invalid. 
Therefore, standing on its own, the Amended Agreement does not give Association
One the enforcement powers that Association One claims in the case under
review.

Having
rejected all of Association One’s appellate challenges to the trial court’s first
five declarations, we conclude that the trial court did not err in granting
this declaratory relief.

C.        Was the Shaars’ use of the
Recreational Areas a condition precedent to any obligation to pay assessments
regarding the Recreational Areas?

            In one declaration, the trial court concluded that
the Shaars’ use of the Recreational Areas was a condition precedent to any obligation
by the Shaars to pay assessments regarding the Recreational Areas.  On appeal,
Association One challenges this declaration.  Presuming for the sake of
argument that the Amended Agreement were binding upon the Shaars in this
regard, this agreement purports to impose an obligation upon the homeowners in
Subdivision Two to pay Association One an annual fee “for the use of the
Recreational Areas, which fee shall be a part of the annual assessment
described in Article XX of the [Restrictive Covenants].”  If homeowners in
Subdivision Two fail to timely pay these fees, then, under the Amended
Agreement, Association One purportedly may suspend these homeowners’ “rights of
use and enjoyment of the Recreational Areas.”  We conclude that if the Amended
Agreement were binding upon the Shaars, the Shaars’ use of the Recreational
Areas would not be a condition precedent to any obligation by the Shaars to pay
fees or assessments regarding the Recreational Areas.  Likewise, to the extent
the trial court based its declaration upon the Original Agreement, under that
agreement, the Shaars’ use of the Recreational Areas is not be a condition
precedent to any obligation by the Shaars to pay fees or assessments regarding
the Recreational Areas.  Therefore, we conclude that the trial court erred in
declaring that the Shaars’ use of the Recreational Areas was a condition
precedent to any obligation by the Shaars to pay any assessments regarding the
Recreational Areas.[2]

D.        Did the trial court abuse it
discretion by denying Association One’s plea in abatement?

In
its second issue, Association One asserts that the trial court abused its
discretion by denying its plea in abatement, in which Association One requested
that the trial court abate the case and order the Shaars to join as parties the
other homeowners in Subdivision Two, whose rights and interests Association One
claims would be prejudiced by a declaratory judgment in this case absent their
joinder.  Association One invokes both Texas Civil Practice and Remedies Code
section 37.006(a) and Texas Rule of Civil Procedure 39(a).  See Tex.
Civ. Prac. & Rem. Code Ann. § 37.006(a) (West 2008); Tex. R. Civ. P.
39(a).  Under the former statute, “[w]hen declaratory relief is sought, all
persons who have or claim any interest that would be affected by the
declaration must be made parties.”  Tex. Civ. Prac. & Rem. Code Ann. §
37.006(a).  Section 37.006(a) also provides that “[a] declaration does not
prejudice the rights of a person not a party to the proceeding.”  Id. 
The Supreme Court of Texas has concluded that the determination of which
parties, if any, must be joined under section 37.006(a) should be made using
the legal standard from Texas Rule of Civil Procedure 39.  See Tex. R.
Civ. P. 39; Brooks v. Northglen Ass’n, 141 S.W.3d 158, 162 (Tex. 2004). 
Under this rule, entitled, “Joinder of Persons Needed for Just Adjudication,”
“[a] person who is subject to service of process shall be joined as a party in
the action if . . . he claims an interest relating to the subject of the action
and is so situated that the disposition of the action in his absence may (i) as
a practical matter impair or impede his ability to protect that interest or
(ii) leave any of the persons already parties subject to a substantial risk of
incurring double, multiple, or otherwise inconsistent obligations by reason of
his claimed interest.”[3] 
Tex. R. Civ. P. 39(a).

When
the trial court denied Association One’s plea in abatement, the Shaars were
requesting in their petition the following declarations from the trial court:
(1) “that [Association One] has no legal authority to assess, pursue or seek
collection of assessment fees for recreational areas in [Subdivision One] from
[the Shaars],” (2) “that no contractual lien for assessments in favor of
[Association One] exists against the Property,” and (3) Association One is not
legally entitled to assert any claim against the Property.”  These requested
declarations are all limited to the Shaars and their Property.  The Shaars did
not seek a declaration regarding the rights of other homeowners in Subdivision
Two, and the Shaars did not seek a declaration regarding the validity or status
of the Amended Agreement.

Before
asserting its plea in abatement, Association One filed a counterclaim against
the Shaars asking the trial court to declare that (1) “[the Amended Agreement]
and [Restrictive Covenants] are valid governing instruments to which [sic] the
[Shaars] purchased their property subject to [sic],” (2) the [Amended
Agreement] establishes a valid lien against the lots of all [Subdivision Two]
lot owners including the [Shaars],” (3) “[Association One] has the right to enforce
the [Amended Agreement], assess and collect recreational usage assessments, and
foreclose upon the lien established by the [Amended Agreement], against
[Subdivision Two] lot owners including the [Shaars].”  Though it sought
declaratory relief expressly covering all Subdivision Two owners, Association
One did not join any other Subdivision Two owners to its claims for declaratory
relief, nor did Association One assert that joinder of these owners was
necessary as to Association One’s counterclaim.

After
asserting its counterclaim for declaratory relief against the Shaars,
Association One filed its plea in abatement, in which it asked the trial court
to order the Shaars to join all other Subdivision Two homeowners to the suit
and to dismiss the Shaars’s claims if they failed to do so.  Association One
asserted that there were at least 74 other homeowners in Subdivision Two, but
Association One did not provide the trial court with any evidence as to the
identity, number, or interests of these other homeowners.[4]  On this record,
we conclude that the trial court did not err by impliedly finding that
Association One had failed to show that Rule 39(a) required the joinder of the
other homeowners in Subdivision Two.  Accordingly, the trial court did not
abuse its discretion when it denied Association One’s plea in abatement.[5]  See Acosta v.
Tri State Mortgage Co., 322 S.W.3d 794, 803–04 (Tex. App.—El Paso 2010, no
pet.) (holding that record supported trial court’s determination that the bank
did not have to be joined under Rule 39(a)); Barraza v. Law Offices of Smith
& Gopin, 918 S.W.2d 608, 610–12 (Tex. App.—El Paso 1996, no writ)
(holding that on record before the court Rule 39(a) did not require joinder of
party).[6]


 

IV.  Conclusion

            The trial court did not err in making its first
five declarations, and we overrule the first issue to this extent.  But the
trial court erred in declaring that the Shaars’ use of the Recreational Areas
was a condition precedent to any obligation by the Shaars to pay any assessments
regarding the Recreational Areas, and we sustain the first issue to this
extent.  Because the trial court did not abuse its discretion by denying
Association One’s plea in abatement, we overrule the second issue. 
Accordingly, we modify the trial court’s judgment to delete the declaration that
the Shaars’ use of the Recreational Areas was a condition precedent to any
obligation by the Shaars to pay any assessments regarding the Recreational
Areas.  As modified, the trial court’s judgment is affirmed.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown.









[1] In contrast, Greenmark was a party to the Original
Agreement and, under that agreement, the homeowners in Subdivision Two had to
pay an annual fee for the use of the Recreational Areas to Association Two, rather
than Association One.  In addition, in the Original Agreement, Association Two
did not purport to assign to Association One any of Association Two’s rights,
powers, and authority to enforce collection of these fees.





[2]
In the Original Agreement, the parties agree that Association One has the right
to charge homeowners in Subdivision Two a “use fee for the use of the
Recreational Areas.”  The Amended Agreement contains similar language.  But
nothing in the record reflects that Association One is seeking to exercise this
right against the Shaars, and this language does not create a condition
precedent as to the Shaars’ obligation to pay the annual fee to Association Two
under the Original Agreement or the Shaars’ purported obligation to pay the
annual fee to Association One under the Amended Agreement.  





[3]  Under Rule 39(a), a person subject to service of
process also should be joined as a party if “in his absence complete relief
cannot be accorded among those already parties.”  Tex. R. Civ. P. 39(a). 
Association One has not argued that this part of Rule 39(a) applies in the case
under review, and any such argument would lack merit.

 





[4] The trial court held a hearing on
Association One’s plea in abatement on December 12, 2008.  Our appellate record
does not contain any reporter’s record from this hearing.  Association One
attaches to its appellate brief a reporter’s record purporting to be from this
hearing; however, this reporter’s record is not part of our appellate record,
so we cannot consider it.  See Bencon Mgmt. & Gen. Contracting, Inc. v.
Boyer, Inc., 178 S.W.3d 198, 210–11
(Tex. App.—Houston [14th Dist.] 2005, no pet.) (stating that, with limited
exceptions not relevant in the case under review, an appellate court may not consider matters
outside the appellate record).  This was a pre-trial hearing rather than a
trial, and there is no argument by any party or other indication in the record
that evidence was offered at this hearing.  Therefore, the absence of a
reporter’s record does not trigger the common-law presumption that evidence was
admitted at the hearing that supports the trial court’s ruling.  See
Michiana Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 782–83 (Tex. 2005). 





[5] We also note that, under the Declaratory Judgments
Act, the rights of the other homeowners in Subdivision Two are not prejudiced
by the trial court’s declaratory judgment in this case.  See Tex. Civ. Prac.
& Rem. Code Ann. § 37.006(a); Brooks, 141 S.W.3d at 163. 





[6] Association One relies upon Dahl v. Hartman.  See
14 S.W.3d 434, 435–36 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  In Dahl,
the plaintiff sought declarations that the property owners’ association for a
subdivision was not validly formed and that the all of the subdivision’s deed
restrictions had not been validly extended beyond their original expiration
date.  See id.  This relief was much broader than the relief sought by
the Shaars when the trial court denied Association One’s plea in abatement.  See
id.  In addition, in Dahl, the trial court granted the defendant’s
plea in abatement and ordered the plaintiff to serve all property owners in the
subdivision.  See id.  The trial court in Dahl found that the
plaintiff sought a declaration that the deed restrictions were invalid and that
this declaration would affect the interests of all property owners in the
subdivision.  See id.  In the case under review, the trial court made no
such rulings or findings.  The Dahl case is not on point.