**Leura Jean GIRSH and Charles S. Girsh, Sr., Appellants,**

v.

**Peggy ST. JOHN, Appellee.**

No. 09–06–144 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 19, 2006.

Decided March 29, 2007.

Lester R. Buzbee, III, Humble, for appellants.

Dean Gehring, Conroe, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

Leura Jean Girsh and her husband, Charles S. Girsh, Sr. ("the Girshes") appeal from a judgment entered by the trial court granting injunctive relief, and awarding civil damages along with attorney's fees to plaintiff, Peggy St. John to enforce a restrictive covenant running with residential property located in the Tall Timbers subdivision, Section Two, in Montgomery County, Texas. The Girshes answered by pleading St. John lacked standing to bring suit, and by pleading the defenses of laches, abandonment, and limitations. Trial was to the court, with both parties presenting testimony and physical evidence in their respective cases. The trial court ultimately ruled in favor of St. John, and issued findings of fact and conclusions of law. On appeal, the Girshes complain of the trial court's ruling that St.

John had standing to file suit (issue two), and of the trial court's failure to find the Girshes established any of their defenses (issues one and three). Being a question of law, the standing issue must be addressed first.[1]

■ "Standing is a constitutional prerequisite to maintaining suit." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex.2004); *see Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993). It is also a component of subject matter jurisdiction, and, as such, cannot be waived and may be raised for the first time on appeal. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445. Therefore, the issue of standing is reviewed de novo. *See City of Sunset Valley*, 146 S.W.3d at 646. To establish standing, a party must show a justiciable interest by alleging a threatened or actual injury. *See Allstate Indem. Co. v. Forth*, 204 S.W.3d 795, 796 (Tex.2006).

■ Generally, any person entitled to benefit under the terms of a restrictive covenant may enforce it. *See Anderson v. New Property Owners' Ass'n of Newport, Inc.*, 122 S.W.3d 378, 384 (Tex.App.-Texarkana 2003, pet. denied) (citing *Calvary Temple v. Taylor*, 288 S.W.2d 868, 872–73 (Tex.Civ.App.-Galveston 1956, no writ)). This has been interpreted as meaning that an interested property owner may sue to enforce a restrictive covenant. *See Anderson*, 122 S.W.3d at 384–85 (citing *Giles v. Cardenas*, 697 S.W.2d 422, 427 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.)). In *Powell v. Tall Timbers Property Association, Incorporated*, No. 09–01–495–CV, 2002 WL 1990930 (Tex.App.-Beaumont, Aug.29, 2002, no pet.) (not des-

---

1. We note here that the Girshes' brief fails to contain a concise statement of the issues presented for review which results in the concomitant failure to provide a clear and concise argument in support of said issues. *See*

Tex.R.App. P. 38.1(e), (h). Although we elect to address the issues here, parties submitting such a brief risk having it stricken and the appeal decided as if no brief had been filed. *See* Tex.R.App. P. 38.9(a).

ignated for publication), we examined certain provisions of the same restrictive covenant that is now before us in the context of a suit to collect unpaid maintenance fees. 2002 WL 1990930, at *1. The defendants there counterclaimed for, inter alia, breach of implied duty of good faith and fair dealing, and breach of fiduciary duty. *Id.* 2002 WL 1990930, at *1 n. 3. After examining paragraph "1" of the restrictions, we stated the following:

> As explained in *Simms v. Lakewood Village Property Owners Ass'n, Inc.*, 895 S.W.2d 779, 787 (Tex.App.-Corpus Christi 1995, no writ), "[t]he terms 'right' and 'duty' are not synonymous, but even if they were, appellants, as owners, would have the same duty to enforce the covenants as the association. Thus, the association and appellants would each have the same cause of action against each other, and such a suit would have an absurd result and serve no useful purpose." 895 S.W.2d at 787. Here, the terms of the deed restrictions impose rights of enforcement, but not duties. We find, as a matter of law, that the Association had no duty to enforce the deed restrictions. The language of the deed restrictions is clear and unambiguous.

*Powell,* 2002 WL 1990930, at *2. As we found in *Powell,* the restrictive covenant authorizes property owners in the Tall Timbers, Section Two subdivision to enforce all provisions contained therein.

The record before us contains a copy of the plat and dedication instrument pertaining to the Tall Timbers, Section Two subdivision, a copy of the restrictive covenant pertaining to the Tall Timbers, Section Two subdivision filed with the Montgomery County Clerk's Office in 1965, as well as copies of deeds for certain numbered lots located in the Tall Timbers, Section Two subdivision purchased by St. John in 1976. Each of St. John's deeds explicitly states that the specifically numbered lot is conveyed subject to any and all "restrictions" or "valid covenants [and/or] restrictions[.]" The covenant language is also quite explicit as it authorizes property owners to "prosecute any proceeding at law or equity" against violations or attempted violations of the enumerated restrictions. Notwithstanding that St. John's lots 150 and 151 were originally platted as "reserved area," her deeds to the numbered lots are expressly burdened with the limitations contained in the restrictive covenant in question.

▮ To establish standing, a party must have a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *See Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex. 2005). "A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority...." *Id.* at 848 (quoting *Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996)). Based upon the pleadings and the evidence in the record before us, we find that St. John established her standing as a matter of law to file suit to enforce the provisions of the Tall Timbers, Section Two restrictive covenants. The Girshes' second issue is overruled.

▮ In their first issue, the Girshes argue their evidence established that limitations had run on St. John's enforcement suit as a matter of law. With regard to St. John's invocation of the discovery rule, the Girshes note that St. John failed to establish the rule's applicability because she failed to show that the Girshes' violation was undiscoverable even when exercising reasonable diligence. The pertinent findings/conclusions on this point read as follows:

*Findings of Fact*

4. Sometime in [ ] late 1998 or early 1999 Plaintiff discovered a Mobile Home (the "Mobile Home") on the Property of the Defendants.

5. Such Mobile Home was undiscoverable until discovered by Plaintiff in the fall of 1997 or early 1998.

10. Defendants [were] aware of the Mobile Home located on the Property and that such Mobile Home was a violation of the Deed Restrictions of Tall Timbers, Section Two.

*Conclusions of Law*

5. The Statute of Limitations for enforcement of deed restrictions is four years.

6. The Statute of Limitations in this action was tolled until Plaintiff discovered the Mobile Home located [on] the Property.

■■■■■ The trial court correctly recognizes that the statute of limitations for suits to enforce deed restrictions is four years. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.051 (Vernon 1997); *Air Park–Dallas Zoning Comm. v. Crow–Billingsley Airpark, Ltd.,* 109 S.W.3d 900, 911 (Tex. App.-Dallas 2003, no pet.); *Malmgren v. Inverness Forest Residents Civic Club, Inc.,* 981 S.W.2d 875, 877 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *Colton v. Silsbee State Bank,* 952 S.W.2d 625, 630 (Tex.App.-Beaumont 1997, no writ); *Buzbee v. Castlewood Civic Club,* 737 S.W.2d 366, 368 (Tex.App.-Houston [14th Dist.] 1987, no writ); *Park v. Baxter,* 572 S.W.2d 794, 795 (Tex.App.-Tyler 1978, writ ref'd n.r.e.). An enforcement action accrues upon breach of the restrictive covenant. *See Colton,* 952 S.W.2d at 630; *Baxter,* 572 S.W.2d at 795. In the instant case, the evidence established that the mobile home in question was purchased by the Girshes in 1984 and placed on their property on or about that same year. It was also established that paragraph "10" of the restrictive covenant in question contained the following pertinent provision: "No trailer house or covered trailer shall at any time be erected or placed on any lot or tract for any purpose whatsoever." The record evidence, therefore, establishes the Girshes breached the restrictive covenant when they moved the mobile home onto their property in 1984.

At trial, St. John presented evidence in an attempt to avoid her suit's being barred by the four-year statute of limitations. The essence of her position at trial was that she did not discover the existence of the mobile home in the Girshes' back yard until late 1998 or early 1999 because of an overgrowth of "forest or trees." St. John admitted she had no idea when the mobile home was placed on the Girshes' property. St. John introduced photographs of the mobile home with the photographer apparently standing on a public street in the subdivision. From that vantage point, a vacant lot is situated between the photographer and the view of the mobile home. St. John contended that until the Girshes' neighbor, Mark McClain, used a "dozer" to clear this vacant lot of "underbrush, trees, large trees, small trees and brush[,]" the mobile home was not visible. St. John testified that McClain must have cleared off this vacant lot in late 1998 or early 1999 "because that's when we discovered the mobile home, we could see it." Because St. John's photographs were taken after the lot had been cleared, they do not depict any significant obstruction and the mobile home is plainly visible. St. John also testified that at some point in time McClain parked a "large Ryder rental truck" on the vacant lot that apparently obstructed the view of the mobile home. However, except for the testimony of St. John's husband, James, the testimony of

St. John's other witnesses did not establish the trailer was completely invisible from view prior to late 1998 or early 1999, but did show that, at some point in time, some of the witnesses became aware of the trailer's presence in the Girshes' back yard.

The Girshes and their witnesses testified that the trailer had been visible to the public well before late 1997. Additionally, Mark McClain testified that he cleared the lot separating his property from the Girshes' property sometime around 1976 to 1979. McClain added that from that point until the time of trial he had not permitted the grass on the lot to grow any higher than waist-high. He also testified that he did park a work-truck on his lot overnight for about two to three nights per week, and only for the "few months" he worked for the company that owned the truck. McClain also indicated that he had "dozers" on his property on several occasions over the years, but only once to clear the lot next to Girshes' property.

In *Via Net v. TIG Insurance Company,* 211 S.W.3d 310 (Tex.2006) (per curiam), the Texas Supreme Court noted that it has restricted the use of the discovery rule to "exceptional cases" so as to avoid defeating the purposes behind the limitations statutes. *Via Net,* 211 S.W.3d at 313 (citing *S.V. v. R.V.,* 933 S.W.2d 1, 25 (Tex.1996)). The Court's more recent history vis-a-vis the discovery rule was detailed in *HECI Exploration Company v. Neel,* 982 S.W.2d 881 (Tex.1998), as follows:

> The discovery rule has been applied in limited categories of cases to defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action. *See Computer Associates International, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex. 1996). Historically, the reasoning that supported this Court's decisions to apply

> the discovery rule in particular cases was "diverse, somewhat inconsistent, and often overly broad." *S.V. v. R.V.,* 933 S.W.2d 1, 5–6 (Tex.1996). We attempted to bring predictability and consistency to our jurisprudence in this area in *Altai,* 918 S.W.2d at 455–56, and *S.V. v. R.V.,* 933 S.W.2d at 5–6. In those decisions, we articulated two unifying principles that generally apply in discovery rule cases. They are that the nature of the injury must be inherently undiscoverable and that the injury itself must be objectively verifiable. *See Altai,* 918 S.W.2d at 456; *S.V.,* 933 S.W.2d at 6. We explained in Altai that the applicability of the discovery rule is determined categorically. Although the particular injury in Altai may not have been discovered, it was the type of injury that generally is discoverable by the exercise of reasonable diligence: "While some trade secret misappropriations might not be quickly discovered, this isolated fact does not alter the reality that, in most cases, trade secret misappropriation generally is capable of detection within the time allotted for bringing such suits." 918 S.W.2d at 457.

982 S.W.2d at 886.

There is no serious dispute that the injury-the Girshes' violation of the restrictive covenant—was objectively verifiable by the presence of the prohibited item (the mobile home) on the Girshes' property. The question to be decided is whether this is the type of injury that generally is discoverable by exercising reasonable diligence. *Id.* The Court in Via Net added to the analysis in the following manner:

> "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 734–35 (Tex.2001). This le-

gal question is decided on a categorical rather than case-specific basis; the focus is on whether a type of injury rather than a particular injury was discoverable. *Id.* at 736; *Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 122 (Tex.2001). *Via Net,* 211 S.W.3d at 313–14. We reiterate that the type of injury presented in the record is the placing of a full-size mobile home (approximately 12 feet by 46 feet) on a residential lot located in the midst of a populated residential subdivision in violation of a per se prohibition against trailers on residential property for any purpose.

We are unable to hold that such a category of injury is unlikely to be discovered within the four-year limitations period with the exercise of due diligence. We are guided in this by the Supreme Court's discussion of the discovery rule in HECI Exploration. In that case, the plaintiffs, owners of royalty interests in an oil and gas lease, sued their lessee, HECI, in 1993 because HECI failed to notify the plaintiffs that it had sued and obtained a judgment against an operator of an adjoining lease for damage to the plaintiffs' reservoir from illegal production. *HECI Exploration,* 982 S.W.2d at 884. The illegal production apparently began as early as 1985, and ended in December 1988, when oil and gas reserves otherwise recoverable through the well in question were permanently lost. *Id.* In reversing the court of appeals's application of the discovery rule to certain causes of action, the Supreme Court set out the following rationale:

As owners of an interest in the mineral estate, the Neels had some obligation to exercise reasonable diligence in protecting their interests. This includes exercising reasonable diligence in determining whether adjoining operators have inflicted damage. Royalty owners cannot be oblivious to the existence of other operators in the area or the exis-

tence of a common reservoir. In some cases, wells visible on neighboring properties may put royalty owners on inquiry. In any event, a royalty owner should determine whether a common reservoir underlies its lease because it knows or should know that, when there are other wells drilled in a common reservoir, there is the potential for drainage or damage to the reservoir.

*Id.* at 886.

As was noted above, the restrictive covenant in question authorizes any property owner in the Tall Timbers, Section Two subdivision to enforce all provisions contained therein. Echoing the Court in HECI Exploration, we find that, as an owner of property in Tall Timbers, Section Two, St. John "had some obligation to exercise reasonable diligence in protecting [her] interests." *See id.* The record evidence indicates the mobile home was present in the Girshes' back yard openly, and there is no evidence of the use of artificial devices or methods to camouflage or hide it. St. John's request for application of the discovery rule would require us to hold a full-size mobile home's presence on a residential lot in violation of a restrictive covenant, with said lot located in a highly populated subdivision, is a category of injury inherently undiscoverable even with the exercise of reasonable diligence, because of the presence of indigenous flora spontaneously growing nearby. A decision by us favorable to St. John would mean that she had established that the category of reasonably diligent property owners would not discover the existence of a full-size mobile home on a residential lot in the midst of a populated subdivision during the four-year limitations period. *See Royce Homes, L.P. v. Dyck,* No. 09–06–034–CV, 2006 WL 3094323, at *4 (Tex.App.-Beaumont, Nov.2, 2006, no pet.).

■ In a trial on the merits, the party seeking the benefit of the discovery rule to avoid limitations has the burden of pleading and proving the discovery rule. *See Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 n. 3 (Tex.1999); *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988). The discovery rule is a plea in confession and avoidance. *Woods,* 769 S.W.2d at 517. The Court in Woods further stated:

> A plea in confession and avoidance is one which avows and confesses the truth in the averments of fact in the petition, either expressly or by implication, but then proceeds to allege new matter which tends to deprive the facts admitted of their ordinary legal effect, or to obviate, neutralize, or avoid them.

*Id.* (citing Black's Law Dictionary, 269 (5th ed.1979)). The Supreme Court has made it abundantly clear that the discovery rule is a limited exception to strict compliance with the statute of limitations. *See Via Net,* 211 S.W.3d at 313; *Altai, Inc.,* 918 S.W.2d at 457 (citing *Trinity River Auth. v. URS Consultants,* 889 S.W.2d 259, 262 (Tex.1994)). It must be remembered that " 'the primary purpose of limitations is to prevent litigation of stale or fraudulent claims....' " *Altai, Inc.,* 918 S.W.2d at 457 (quoting *Robinson v. Weaver,* 550 S.W.2d 18, 20 (Tex.1977)).

In the instant case, the Girshes firmly established the mobile home was moved onto their residential lot in the early 1980's, most likely in 1984 or 1985. St. John testified that she had no idea when the mobile home was moved onto the Girshes' property, but contends the mobile home was inherently undiscoverable until "the fall of 1997," or "late 1998 or early 1999." [2] Even taking the year 1985 as the latest established date of the trailer's appearance on the Girshes' lot, St. John fails to establish what, if any, restrictive· covenant "enforcement" activity she was specifically involved in, other than her unrewarding experience with the property owners' association, so as to establish reasonable diligence in learning of the mobile home's presence on the residential lot. In other words, the roughly twelve or thirteen-year gap between the trailer's arrival at the Girshes' and St. John's awareness of its existence is largely unaccounted for by St. John, except by resort to the excessive growth of trees, brush, and bushes. While the record does contain some testimony regarding the establishment of a "neighborhood watch" group comprised of certain property owners, it is not shown when that group was formed, or how it operated, in any detail. It appears from the testimony that it functioned as neighborhood security and as a lookout for violators of the restrictive covenant, but the record indicates nothing further about the group. In reversing the court of appeals's application of the discovery rule, the Court in Via Net concluded its analysis with the following observation:

> Our attempts to bring predictability and consistency to discovery, rule jurisprudence have focused on types of injury, not causes of action. Some contract breaches may be inherently undiscoverable and objectively verifiable. But those cases should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims.

*Via Net,* 211 S.W.3d at 314–15 (citations omitted). The instant cause of action was also subject to a "relatively long four-year

---

**2.** Assuming without deciding the 1999 discovery year to be the correct one, the record is silent as to the reason an additional two years lapsed before St. John filed suit to have the mobile home removed as the original petition is file-stamped March 29, 2001.

limitations period." Accordingly, we find that St. John failed to establish that the presence of a full-size mobile home on a lot in a populated residential subdivision was inherently undiscoverable. *See Dyck,* 2006 WL 3094323, at *4. We hold, therefore, that the discovery rule was inapplicable to defer accrual of St. John's cause of action against the Girshes to enforce the Tall Timbers, Section Two restrictive covenant as the four-year statute of limitations bars the claims asserted by St. John. We reverse the judgment of the trial court and render judgment that St. John take nothing. *See* Tex.R.App. P. 43.2(c); *Steinhagen v. Ehl,* 126 S.W.3d 623, 628 (Tex.App.-Beaumont 2004, pet. denied).

REVERSED AND RENDERED.