# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-11-00270-CV

**Jeffrey A. Fox, Appellant**

**v.**

**James F. O'Leary, Jr., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-10-002394, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The opinion and judgment issued in this cause on March 14, 2012, are withdrawn, and the following opinion is issued in lieu of the earlier one.

Jeffrey A. Fox appeals a take-nothing judgment rendered against him in his suit for injunctive relief arising out of his claim that James F. O'Leary, Jr.'s construction of a home on his lot violated deed restrictions governing their subdivision. After a bench trial, the trial court concluded that Fox's claims were barred by the affirmative defense of laches. We will reverse the trial court's judgment and remand the cause for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

Fox and O'Leary own adjoining lots in the Highland Hills subdivision in Austin. O'Leary purchased his lot in 1977, and Fox purchased his lot in early 2007. At the time of both purchases, the lots had houses on them that were built during the original development of the subdivision in the 1960s. All the lots in the subdivision, including those owned by Fox and O'Leary, are subject to deed restrictions recorded in the Travis County Deed Records. The deed restrictions have been in place since 1963 and provide, in pertinent part:

> 8.     Set-Back: Front Line, Side Line, and Rear Line
>
> No structure shall be located or erected on any plot nearer to the front plot line than 40 feet; or nearer than 10 feet to any side line; or nearer than 25 feet to a side street line; or nearer than 20 feet to any rear line; provided, that the [S]ubdividers, or in the alternate, the Architectural Committee referred to in Paragraph 10 may vary set-back requirements to City minimum where in the opinion of the Subdividers or the Committee no adverse effect will be had on the neighborhood and where, because of trees and/or topography, the strict enforcement of the provisions of this paragraph would militate against the best utilization of the lot. Under no circumstances, however, shall a structure approach nearer than 25 feet to the front line; or nearer than 7 1/2 feet to any side line; or nearer than 10 feet to any rear line, or if a corner, nearer than 15 feet to a side street line.

In October 2007 O'Leary's house was destroyed by fire. In 2009 O'Leary decided to rebuild on the lot and hired an architect to prepare plans and specifications for the new construction. Construction began in January 2010. By mid-February the slab for the foundation (apparently slightly larger than the old slab) was poured, and by early March framing of the exterior walls was under way.

On March 4 Holly Eaton, O'Leary's next-door neighbor on the south side of his property, notified O'Leary that his new house was in violation of the setback provisions of the deed

restrictions. Specifically, she informed him that the house was nearer than 10 feet to the boundary between their lots. At that time she showed O'Leary a copy of the deed restrictions. The next day, O'Leary reviewed the Travis County real property records and confirmed the existence of the deed restrictions Eaton had showed him. O'Leary testified that he "went down there to check to find out whether or not there were any other additional documents that were relevant to the documents or the copy of the deed restrictions [Eaton] had provided" and "to find out if there was anything in addition to those deed restrictions that would impact the validity of the original document." O'Leary further testified:

> But still and all, I realized that the deed restrictions—regardless of what [Eaton] did to soften the blow, so to speak, the deed restrictions were what they were. And I realized shortly thereafter—I probably measured the north property line and realized that I was in violation at that point also. And all through this process, I'm thinking how can I live here in this property, in this subdivision for 30 years, and be totally oblivious of any deed restrictions? And I—I felt as though I was absolutely in an incredulous [sic] position to be in. I started thinking about, at that time, the amount of money, which was in the neighborhood of well over $200,000 that I had—that we had drawn already on the construction draw, and the amount of work that we had done on the house, the framing had been complete, and I took all of those things into account and decided to go ahead and continue with the—with the project.

In mid-May Eaton had a conversation with Fox, who was O'Leary's neighbor to the north, during which she pointed out the fact that O'Leary's new house was being built in violation of the setback provisions in the deed restrictions. Fox reviewed the deed restrictions and confirmed that Eaton was correct. Fox then attempted to contact O'Leary. Not having a telephone number for O'Leary, Fox finally located him by driving through the neighborhood looking for O'Leary's car, which was parked in front of the home O'Leary was living in while his new house was under

3

construction. Fox testified that on June 10, he and O'Leary discussed the new construction and that he asked O'Leary how he was able to circumvent the deed restrictions. According to Fox, O'Leary stated that he did not think the deed restrictions were enforceable. On June 14 Fox notified O'Leary in writing that he objected to the new construction because it violated the deed restrictions and advised O'Leary to consult with his architect regarding how to remedy the violations. O'Leary testified that he did not stop construction on the house because

> I felt in my heart of hearts that given the amount of work that had been done on the house, given what it would take to now redesign the house, I thought I was just in an impossible situation, and I wasn't about [sic] halting construction at that point, allowing the project to lay [sic] dormant while we tried to work through this process. I felt as though, at least until I had received this letter and then maybe a little beyond it, that there was a chance that we might be able to—specifically myself and Mr. Fox might be able to work something out to accommodate his concerns.

In July 2010 Fox sued O'Leary for breach of restrictive covenants, alleging that O'Leary's construction of the home violated deed restrictions governing their subdivision. Fox sought a permanent injunction that would require O'Leary to bring his home into compliance with the deed restrictions. O'Leary filed a general denial and, as affirmative defenses, asserted that Fox's claims were barred by limitations, waiver, laches, and unclean hands. In a counterclaim, O'Leary alleged that Fox's house also failed to comply with the deed restrictions and sought to enjoin Fox from allowing his house to remain on his property in violation thereof. O'Leary also sought a declaration that Fox's right to enforce the deed restrictions was barred by limitations and had been waived by (1) the presence of other non-conforming residences in the subdivision, and (2) Fox's conduct in waiting an unreasonable length of time to assert his claim. O'Leary requested that the

4

trial court declare any non-compliance to be *de minimis*, balance the equities between the parties, and allow the house to remain in place. After a four-day bench trial, the court rendered judgment in O'Leary's favor on the ground that he had established that Fox's claims were barred by the affirmative defense of laches. The trial court expressly denied O'Leary's other affirmative defenses and also rendered judgment that O'Leary take nothing by way of his counterclaim. Fox perfected this appeal.

## STANDARD OF REVIEW

In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence to support them as we would review a jury's findings. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When the trial court's express findings of fact do not address all grounds for recovery or defenses, an appellate court implies findings of fact regarding the omitted grounds or defenses that are needed to support the judgment. *Pulley v. Milberger*, 198 S.W.3d 418, 427 (Tex. App.—Dallas 2006, pet. denied). To determine whether legally sufficient evidence supports a challenged finding, we must credit evidence favorable to the finding if a reasonable factfinder could, disregard contrary evidence unless a reasonable factfinder could not, and reverse the factfinder's determination only if the evidence presented in the trial court would not enable a reasonable and fair-minded factfinder to reach the judgment under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain a legal-sufficiency challenge if the record reveals: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the

evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810.

In reviewing a factual-sufficiency challenge, we examine the entire record and consider and weigh all the evidence, both in support of and contrary to the challenged finding. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Urista v. Bed, Bath & Beyond, Inc.*, 245 S.W.3d 591, 601 (Tex. App.—Houston [1st Dist.] 2007, no pet.). When a party attacks the factual sufficiency of an adverse finding on which it does not have the burden of proof, we set aside the finding only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

We review the trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although an appellant may not challenge a trial court's conclusions of law for factual sufficiency, we review de novo the trial court's legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.*

## DISCUSSION

In his first issue, Fox complains of the trial court's conclusion that laches barred his claim, challenging both the legal and factual sufficiency of the evidence supporting that conclusion. Laches is an equitable remedy that prevents a plaintiff from asserting a claim due to a lapse of time. *See Green v. Parrack*, 974 S.W.2d 200, 204 (Tex. App.—San Antonio 1998, no pet.); *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 912 (Tex. App.—Houston

6

[1st Dist.] 1995, writ denied). The defense of laches requires proof of (1) a party's unreasonable delay in asserting a legal or equitable right, and (2) a good-faith detrimental change of position by another because of the delay. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989). The party asserting laches has the burden of proving both of these elements. *Colton v. Silsbee State Bank*, 952 S.W.2d 625, 629 (Tex. App.—Beaumont 1997, no pet.). As a general rule, laches will not bar a plaintiff's suit before the statute of limitations has run absent "extraordinary circumstances" that would work a "grave injustice." *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998); *Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 840 (Tex. 1968); *Green* 974 S.W.2d at 204. Laches is an equitable theory, and this Court has declined to balance the equities in favor of a party who incurs building costs after receiving actual or constructive notice of a deed restriction prohibiting construction. *Bollier v. Austin Gurdwara Sahib, Inc.*, Nos. 03-09-00313-CV and 03-09-00317-CV, 2010 WL 2698765, at *8 (Tex. App.—Austin July 9, 2010, pet. denied) (mem. op.) (citing *Jim Rutherford Invs., Inc. v. Terramar Beach Comty. Ass'n*, 25 S.W.3d 845, 850 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)).

We first address whether O'Leary acted in good faith with respect to the events at issue in this case. *See City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964) (party asserting affirmative defense of laches must prove that he changed his position in good faith). The evidence presented at trial reveals that O'Leary closed on the construction financing for his new house in December 2009. In connection with the financing, O'Leary obtained a new title commitment. Schedule B of the title policy sets forth the Exceptions from Coverage. The first exception appearing on Schedule B states:

7

We do not cover loss, costs, attorney's fees and expenses resulting from:

1.  The following restrictive covenants of record itemized below (We must either insert specific recording data or delete this exception):

    Volume 16, Page 84 Plat Records; Volume 2392, Page 620, Volume 2650, Page 66, Deed Records, Travis County, Texas.

In connection with the closing, O'Leary executed a "Closing Affidavit." The affidavit contains several paragraphs, each of which is initialed by O'Leary.[1] The second and third paragraphs state the following:

2)  RECEIPT OF TITLE COMMITMENT: You acknowledge having *received and reviewed* a copy of the Title Commitment issued in connection with this transaction and you understand that your Owner Title Policy will contain the exceptions set forth in Schedule B of the Title Commitment, and any additional exceptions to title resulting from the documents involved in this transaction.

3)  NOTICE: You may wish to consult an attorney to discuss matters shown in Schedule B or C of the Title Commitment. *These matters will affect your title and use of your Property. . . .* Title Company does not represent that your intended use of the Property is allowed under the law or *under the restrictions or exceptions to title on your Property.*

(Emphasis added.) It is evident, therefore, that O'Leary was notified of, and acknowledged awareness of, the existence of deed restrictions governing his property in December 2009. *See In re Lyon Fin.* Servs., 257 S.W.3d 228, 232 (Tex. 2008) ("A party who signs an agreement is

---

[1] The affidavit expressly states that by initialing the paragraphs, O'Leary "acknowledges understanding of the disclosures being made by Title Company and affirms the representations made to [him]."

8

presumed to know its contents."). Moreover, he was informed of their precise location in the Travis County real property records. Rather than undertake to familiarize himself with the content of the deed restrictions, O'Leary apparently took no steps to obtain and review them. While O'Leary claims to have lacked actual notice of the content of the deed restrictions, that information was readily available to him had he acted with reasonable diligence instead of with indifference to their existence.

> Means of knowledge with the duty of using them are in equity equivalent to knowledge itself. . . . So that, in legal parlance, actual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed.

*Champlin Oil & Ref. Co. v. Chastain*, 403 S.W.2d 376, 388 (Tex. 1965) (quoting *Hexter v. Pratt*, 10 S.W.2d 692, 693 (Tex. Comm'n App. 1928, judgm't adopted) ("Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge.")); *see also Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984) (per curiam) ("A purchaser is charged with knowledge of the provisions and contents of recorded instruments."). O'Leary's willful ignorance of the constraints that the deed restrictions imposed on his use of his property equates to actual knowledge of them. Moreover, O'Leary testified that "within a number of days" of his neighbor's telling him on March 4 that the construction violated the deed restrictions, and after he "lost a number of nights of sleep," he consciously "decided to go ahead and continue" the project. Despite having full knowledge that his project violated the deed restrictions, he chose to continue drawing on his construction loan and progressing to the final stages of construction. While the trial court

9

made no express finding that O'Leary acted in good faith, either when the project commenced or when he decided to continue construction within days of being told by his neighbor that he was violating the deed restrictions, there is insufficient evidence to support any implied finding to that effect. Rather, O'Leary's lack of diligence in familiarizing himself with the deed restrictions, of which he was aware no later than December 2009, and his continuation of the project when expressly told by his neighbor that he was in violation of them, conclusively establishes that he did not act in good faith. Because O'Leary did not act in good faith, the trial court erred in concluding that Fox's claim for breach of the restrictive covenants was barred by laches.[2]

---

[2] Another impediment to O'Leary's laches defense may be that a party seeking the benefit of the equitable theory of laches must come to court with "clean hands." *See In re Eagle Global Logistics, L.P.*, 89 S.W.3d 761, 766 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding); *see also Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988) (citing *City of Wink v. Griffith Amusement Co.*, 100 S.W.2d 695, 702 (Tex. 1936), and *Breaux v. Allied Bank*, 699 S.W.2d 599, 604 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e)) (party seeking equitable remedy "must do equity and come to court with clean hands"); *Truong v. City of Houston*, 99 S.W.3d 204, 212 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (party with "unclean hands" is not permitted to pursue equitable relief). The doctrine of "unclean hands" bars equitable relief sought by "one whose conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing." *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 889 (Tex. App.—Houston [14th Dist.] 2006, orig. proceding) (quoting *Thomas v. McNair*, 882 S.W.2d 870, 880-81 (Tex. App.—Corpus Christi 1994, no writ)). Texas courts have held that the doctrine of "unclean hands" may be invoked to counter equitable defenses. *See McMahan v. Greenwood*, 108 S.W.3d 467, 494 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd.*, 817 S.W.2d 160, 165 (Tex. App.—Houston [14th Dist.] 1991, no writ) ("The doctrine can be raised by a plaintiff, but only to attack an equitable defense alleged by a defendant."); *see also Hughes v. Aycock*, 598 S.W.2d 370 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (one with unclean hands cannot rely on equitable defense of estoppel). Two courts have specifically held that defendants with "unclean hands" may not assert the equitable defense of laches. *See Baird v. City of Melissa*, 170 S.W.3d 921, 927 (Tex. App.—Dallas 2005, no pet.); *Truong*, 99 S.W.3d at 212. In the present case, the same evidence that conclusively establishes O'Leary's lack of good faith also conclusively establishes that he had "unclean hands" with respect to the matters at issue here.

10

In three crosspoints, O'Leary contends that the judgment should be upheld on the alternative grounds that, as a matter of law, Fox's claims are barred by limitations, waiver, and/or unclean hands. The trial court's judgment expressly denied each of these affirmative defenses. When attacking the legal sufficiency of the evidence to support an adverse finding on an issue for which it had the burden of proof, the appellant must demonstrate that the evidence conclusively established all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). A party attempting to overcome an adverse finding as a matter of law must surmount two hurdles. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.* Only if the contrary position is conclusively established can we sustain the legal sufficiency challenge. Therefore, none of the remaining affirmative defenses can support the judgment unless the record conclusively demonstrates that the elements of at least one of the particular affirmative defenses have been met.

***Statute of Limitations***

O'Leary contends that, as a matter of law, Fox's claim is barred by the applicable four-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2008). A cause of action for enforcement of deed restrictions accrues upon breach of the restrictive covenant. *See Girsh v. St. John*, 218 S.W.3d 921, 925 (Tex. App.—Beaumont 2007, no pet.). O'Leary contends that his original home, which was built in the 1960s, encroached upon the setbacks prescribed by the deed restrictions. He further asserts that when he enclosed his carport in 1988, it

11

created an additional encroachment.[3] He therefore contends that the statute of limitations for the front setback violation began to run in the 1960s (construction of the original house), the statute of limitations for the south side setback violation began to run in 1988 (enclosure of the carport), and the statute of limitations for the north side setback began to run at some time prior to Fox's purchase of his home (presence of HVAC unit). However, once a violation of a restrictive covenant has ceased, the enforceability of the restrictive covenant is renewed, and limitations does not bar enforcement of any future violations. *See Daniels v. Balcones Woods Club, Inc.*, No. 03-03-00310-CV, 2006 WL 263589, at *5 (Tex. App.—Austin Feb. 2, 2006, pet. denied) (mem. op.); *Schoenhals v. Close*, 451 S.W.2d 597, 599 (Tex. Civ. App.—Amarillo 1970, no writ) (limitations period revived when violation of restrictive covenant ceased). Even if O'Leary's previous residence, including the HVAC unit and the enclosed garage, violated the deed restrictions, that violation ceased when the house was destroyed by fire in 2007. The statute of limitations applicable to the new violation of the deed restrictions began to run in January 2010 when construction of the new house began. O'Leary has failed to demonstrate that Fox's claim is, as a matter of law, barred by limitations.

---

[3] O'Leary contends that other features of his property, specifically stone walls and fences, constitute encroachments on the setback under the theory that the term "structure" as used in the deed restrictions encompasses these things. We conclude that this is an unreasonably broad construction of the term "structure" as used in the deed restrictions. *See Bollier v. Austin Gurdwara Sahib, Inc.*, Nos. 03-09-00313-CV & 03-09-00317-CV, 2010 WL 2698765, at *5 n.6 (Tex. App.—Austin July 9, 2010, pet. denied) (mem. op.) (defining "building" as synonymous with "structure" and stating that "*[s]tructure* usually implies considerable size and emphasizes physical make-up with respect to material and design" (emphasis in original)); *see also DeNina v. Bammel Forest Civic Club, Inc.*, 712 S.W.2d 195, 198 (Tex. App.—Houston [1st Dist.] 1986, no pet.) ("Restrictive covenants are to be strictly construed against those who seek to restrict the use of property, and all doubt must be resolved in favor of the free use of the property.")

*Waiver*

O'Leary next contends that Fox's claims are barred by waiver. Waiver is defined as the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). Waiver can be established by a party's express renunciation of a known right or by silence or inaction for so long a period of time as to show an intent to yield the known right. *Tenneco, Inc. v. Enterprise Prods. Co*, 925 S.W.2d 640, 643 (Tex. 1996); *Aguilar v. Segal*, 167 S.W.3d 443, 451 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Jernigan*, 111 S.W.3d at 156.

O'Leary argues that the evidence conclusively establishes that Fox waived enforcement of the deed restrictions because of the existence of a number of houses in the neighborhood that are located in places that encroach on the setback requirements of the deed restrictions. As an initial matter, we note that counsel for O'Leary expressly stated at trial that he was "not seeking a waiver or a declaration that this particular set of covenants is waived as to the entire neighborhood." O'Leary has therefore waived any defense based on an assertion that the deed restrictions have been abandoned in their entirety. Rather, the waiver issue is limited to whether the evidence at trial conclusively establishes that Fox voluntarily and intentionally relinquished his right to enforce the deed restrictions. *See id.* O'Leary asserts that Fox has never taken any steps to enforce the deed restrictions against another person in the subdivision, despite the fact that, according to O'Leary, several other properties violated the setback requirements. We note

13

first, however, that the record does not conclusively establish the existence of widespread violations of the setback requirements in the neighborhood. The record includes the testimony of Donald Cummins, one of the original developers of the subdivision and a member of the Architectural Control Committee and Property Owners' Committee until 1976, by which time houses had been built on all lots in the neighborhood. Cummins testified that the location of each of the originally constructed houses was approved by the pertinent committee, and that to his knowledge, any variances from the setback requirements were reviewed and approved in writing. Although O'Leary attempted to introduce evidence of his own evaluation of which houses in the neighborhood violated the setback requirements, the trial court refused to admit the evidence.

There was evidence admitted at trial that Fox was aware that the corner of one of his neighbor's houses encroached on the side setback. Fox's awareness and failure to act on one other possible violation of the deed restrictions is not, however, sufficient to establish waiver. *See Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Assoc.*, 25 S.W.3d 845, 852 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Moreover, the evidence showed that the house at issue was original construction. Accordingly, taking into account Cummins's testimony, it is a reasonable inference that a variance had been approved by either the Architectural Control Committee or the Property Owners' Committee. And even if it were in violation of the deed restrictions, Fox would be barred by limitations from taking any action to enforce the deed restrictions in that case. Fox's failure to pursue a time-barred claim against another neighbor is not conclusive proof of his intentional right to relinquish his "right" to enforce the deed restrictions against O'Leary.

14

*Unclean Hands*

Finally, O'Leary argues that Fox is barred from pursuing his claim due to his own unclean hands as evidenced by the fact that his own house encroaches on the side setback. O'Leary contends that, under the doctrine of unclean hands, a court may refuse to grant equitable relief (in this case the injunctive relief Fox seeks) to a plaintiff who has been guilty of unlawful or inequitable conduct regarding the issue in dispute. *See Lazy M Ranch v. TXI Operation, LP*, 978 S.W.2d 678, 683 (Tex. App.—Austin 1998, pet. denied). In deed restriction cases, unclean hands applies "when the plaintiff is guilty of the same actions of which the defendant is accused." *Bollier*, 2010 WL 2698765, at *7. The evidence at trial does not conclusively establish that Fox's house actually violates the deed restrictions. Fox's house is original construction. While a corner of Fox's garage is only 7.6 feet from the property line, the deed restrictions permit a variance from the setback requirements that reduces the side setback from 10 to 7.5 feet to accommodate trees or topography. Fox testified that due to the presence of large trees on his property, he assumed that such a variance had been given when the house was originally constructed. And as discussed above, Cummins testified that each of the houses originally constructed in the subdivision was reviewed by the Architectural Control Committee or the Property Owners' Committee to ensure their compliance with the deed restrictions or to review any variances therefrom, and that there was no original construction built without committee approval. This testimony gives rise to a reasonable inference

that a variance had been granted to the original owner of Fox's house. Thus, the record does not conclusively establish that Fox's claim is barred by his own unclean hands.[4]

For the foregoing reasons, we sustain Fox's first appellate issue and overrule O'Leary's crosspoints related to the affirmative defenses of limitations, waiver, and unclean hands.

***Request for Injunctive Relief***

In his second appellate issue, Fox contends that the trial court abused its discretion "in denying Fox a permanent injunction." However, because it concluded that Fox's claim was barred by laches, the trial court did not reach the issue of whether he was otherwise entitled to injunctive relief and, if so, the nature of any such relief. In his live pleading, Fox alleged that in the event O'Leary were permitted to continue to violate the setback requirements, he would be required to incur costs to improve his property to restore some enjoyment to it. The trial court did not balance the equities and enter findings of fact relating to whether the injunctive relief sought by Fox is available under the circumstances, nor were there fact findings regarding whether, as some evidence adduced at trial suggests, equitable relief short of requiring strict compliance with the deed restrictions may be appropriate. To determine whether enforcing the restrictive covenants would be inequitable toward a particular property owner, the trial court must weigh the equities favoring that property owner against the equities favoring the other property owners who acquired their property subject to those restrictions. *Winfield v. Lamoyne*, No. 05-09-01851-CV, 1995 WL 634161, at *13 (Tex. App.—Dallas Oct. 16, 1995, writ dism'd) (mem. op.). We therefore remand the cause to the

---

[4] In addition, it is problematic whether O'Leary could, as a result of his own unclean hands, avail himself of any equitable doctrine.

trial court in order to provide it with the opportunity to balance the equities and make a determination, in the first instance, as to whether Fox is entitled to injunctive relief. We overrule Fox's second issue. Because we are remanding the cause to the trial court, we need not address Fox's third issue related to his request for attorneys' fees.

## CONCLUSION

The trial court erred in concluding that Fox's claim was barred by laches and, having done so, did not make findings of fact regarding Fox's request for injunctive relief. Consequently, we reverse the trial court's judgment and remand the cause for further proceedings.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Remanded on Motion for Rehearing

Filed: July 10, 2012